Wesley M. LOVELY

v.

**ALLSTATE INSURANCE CO.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 3, 1995.

Decided May 30, 1995.

William H. Childs, Childs, Emerson, Rundlett, Fifield & Childs, Portland, for plaintiff.

Amy L. Faircloth, Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

ROBERTS, Justice.

Wesley M. Lovely appeals from a judgment entered after a jury-waived trial in the Superior Court (Penobscot County, *Browne, A.R.J.*). Lovely sued Allstate Insurance Company, his underinsured motorist insurance carrier, to recover compensation for injuries suffered in a motor vehicle accident. The court awarded Lovely $10,499.53 as damages for a knee injury. Lovely argues that the court erred in failing to award additional damages based on an injury to his elbow. We agree, and accordingly we vacate the judgment.

In 1985 Lovely was employed as a tractor-trailer driver in Bangor. In early March 1985 Lovely twice suffered accidental blows to his right elbow that resulted in pain and swelling. He sought treatment at a walk-in clinic in Orono on March 6. On March 22, Lovely visited Dr. Jordan Shubert complaining of continuing pain. Although he could not be certain, Shubert tentatively diagnosed a fracture in Lovely's right elbow. On April 4, 1985, as Lovely drove his tractor-trailer on 14th Street in Bangor, a car driven by Cleo Oliver struck Lovely's vehicle on the right side. As a result of the collision, Lovely struck his right elbow on the truck's bunk.

Following the April accident, Lovely underwent extensive treatment to alleviate persistent pain in his elbow. In April 1986, one year after the accident, Dr. John Bradford performed a "tennis elbow release." During the operation, Bradford observed a condition known as chondromalacia, which can be

caused by trauma. The tennis elbow surgery failed to improve Lovely's elbow. Later, Lovely was treated at Massachusetts General Hospital for an autonomic nervous system disorder called reflex sympathetic dystrophy which is often caused by trauma. Finally, in August 1988, Dr. Jesse Jupiter, a surgeon at Mass. General, performed a second operation on the elbow.

In April 1991 Lovely filed suit against Allstate and Travelers Insurance Company.[1] At trial, Allstate did not dispute that Cleo Oliver was negligent in striking Lovely. Instead, Allstate focused on the March injuries to Lovely's elbow, suggesting that his damages were partially attributable to the preexisting condition.[2] It argued that, in order to recover, Lovely had the burden to demonstrate what portion of his injury resulted from which accident.

The evidence introduced at trial failed to resolve the uncertainty as to which accident was responsible for which portion of Lovely's elbow injury. Bradford could not "get a clear picture" of the extent of the re-injury suffered in the April accident. Jupiter could not tell whether Lovely suffered an initial injury in March that was aggravated by the April accident. Dr. Lawrence Leonard, a medical expert who testified on Lovely's behalf, attributed the initial pain to the March injuries and the later, more severe pain to the April accident, but he offered no basis for that distinction.

Ultimately the trial court, as the factfinder, determined that the evidence provided no basis for an apportionment of damages among the March and April accidents. Although the record contained substantial evidence of pain and suffering as well as medical expenses attributable to the elbow injury, the court did not award any damages based on the injury to Lovely's elbow. It entered a judgment in favor of Lovely in the amount of $10,499.53 for the knee injury. Lovely appealed.

▇▇▇ In the case of joint tortfeasors whose separate negligent acts have caused a single injury that is incapable of apportionment, each defendant is liable for the entire amount of the damages. *Paine v. Spottiswoode,* 612 A.2d 235, 240 (Me.1992). This case presents the question whether the single injury rule applies when a negligent actor, by aggravating a preexisting injury, produces an aggregate injury that is incapable of apportionment. We conclude that it does.

Application of the single injury rule to situations involving preexisting conditions comports with the settled authority from other jurisdictions. For example, one jurisdiction requires that a jury be instructed to impose liability on the defendant for the entire amount of the injury if it is unable to apportion damages between the accident in question and a preexisting condition. *Bigley v. Craven,* 769 P.2d 892, 898 (Wyo.1989). *See also Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811, 813 (1963) ("plaintiff was entitled to an instruction advising the jury that if they could not apportion the disability between the pre-existing arthritis and the trauma then the defendant was liable for the entire damage resulting from the disability"). Even the cases that place the burden on the plaintiff to produce evidence on which to apportion damages acknowledge that the defendant is liable for all of the damage when the injury is indivisible. *See, e.g., LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 632 P.2d 539, 545 (Alaska 1981).

These cases reflect the views of the commentators as well. "[E]ntire liability is imposed both where some of the causes are innocent ... and where two or more of the causes are culpable." W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 52, at 347 (5th ed. 1984). *See also Restate-*

---

1. Travelers carried underinsured motorist coverage for Lovely's employer. Allstate carried Lovely's personal underinsured motorist coverage. Cleo Oliver's insurance company paid the $50,000 limit of her policy before Lovely filed his complaint. Travelers was dismissed from the case by consent of the parties after payment of $25,714.27. Allstate remained in the case, but by stipulation is responsible only for damages within its policy limits that exceed $75,714.27, the amount already paid by Oliver's insurer and by Travelers.

2. At trial, Allstate also disputed the overall extent of damages sustained by Lovely due to other injuries. Neither party has challenged the court's determinations on those other injuries.

*ment (Second) of Torts* § 433A(2), cmt. i (1965). The single injury rule places any hardship resulting from the difficulty of apportionment on the proven wrongdoer and not on the innocent plaintiff. *Id.* § 433B(2), cmt. d (1965). In this case, the court, as the factfinder, found it impossible to apportion Lovely's injuries between the March and the April incidents. It should therefore have held Allstate liable for all of the damage to Lovely's elbow. On remand, the court should assess additional damages attributed to the indivisible elbow injuries.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

LIPEZ, Justice, concurring.

Although I concur in the Court's decision, I write separately to emphasize the importance of this decision to the proper allocation of the burden of proof in personal injury cases involving evidence of preexisting or subsequent injuries. The Court's opinion may require the Superior Court to alter its traditional method of instructing jurors in such cases.

The section on damages in the basic civil jury charge used commonly in the Superior Court includes a statement that the plaintiff must "convince you by a preponderance of the evidence that the particular injury for which [the plaintiff] seeks compensation was caused by defendant's negligence." One paragraph later there is this statement:

> I also instruct you that where there have been independent events affecting the plaintiff's condition, either before or after the incident which gave rise to this trial, you must separate out damages attributable to those prior or subsequent events, and award the plaintiff only those damages which you find to have been proximately caused by the defendant's fault.

Viewed together, these jury instructions support the position of the defendant in this non-jury case that the plaintiff has the burden of apportioning harm between preexisting or subsequent injuries and the injury involved in the instant lawsuit.

The decision in this case makes clear that such an allocation of the burden of proof is improper.[1] Although a defendant can still introduce evidence about a plaintiff's prior or

---

1. This salutary outcome also highlights a possible inconsistency in the basic civil jury charge between the instruction on the responsibility of the plaintiff to separate out damages attributable to prior or subsequent injuries and the classic "eggshell" instruction. The latter instruction reads as follows:

> Let me also instruct you, if you should find that at the time of the incident that the plaintiff had a bodily condition that made (him/her) more susceptible to injury than a person in good health, the defendant is responsible for all injuries suffered by plaintiff as a result of defendant's negligence even if those injuries are greater than would have been suffered by a person in good health under the same circumstances. To put it another way, the law says that if you negligently cause damage to another person, you must take your victim as you find (him/her). What this means is that if you find that in fact plaintiff prior to the accident had a particular pre-existing injury and if you further find that defendant negligently caused further injury to plaintiff's pre-existing problem, then plaintiff is entitled to full compensation for all of those particular damages caused by defendant's negligence, even though (his/her) injuries may have been aggravated or rendered more serious by reason of a pre-existing physical condition.

This instruction uses the phrases "pre-existing injury", "pre-existing problem" and "pre-existing physical condition" interchangeably, thereby blurring a potentially important distinction between a pre-existing injury and a pre-existing condition. An injury connotes some degree of pain, suffering or disability. A condition may or may not involve pain, suffering or disability.

For example, the victim with the congenitally thin skull may have a pre-existing condition that involves no pain and suffering. If this victim suffers extensive head injuries in the accident because of a thin skull, there is no problem of apportionment between pre-existing pain and new pain. The pain is all new. It is simply more extensive because of the pre-existing condition. On the other hand, if the victim has a chronically painful back because of a previous back injury, and if an accident exacerbates this pain, there may be an issue of apportionment between the old and the new pain.

The instruction on damage apportionment in the basic civil jury charge treats this earlier injury as an "independent event affecting the plaintiff's condition," and assigns to plaintiff the burden of "separat[ing] out damages attributable to those prior or subsequent events." The "eggshell" instruction in the basic civil jury charge treats the earlier injury as a part of the victim

subsequent injury and argue that the pain, suffering or disability claimed by the plaintiff in the instant case is largely the result of that earlier or later injury, the court must now make clear to a jury that the defendant has the burden of establishing the causal relationship between the earlier or subsequent injury and the pain, suffering or disability now claimed by the plaintiff.

The plaintiff, of course, must still establish a causal relationship between the injury that is the subject of the lawsuit and the alleged consequences of that injury. *Spickler v. York,* 566 A.2d 1385, 1390 (Me.1989). Once the plaintiff has met that burden, however, the defendant who seeks to limit liability on the basis of a preexisting or subsequent injury has the same burden of proof as a defendant claiming comparative negligence or a failure to mitigate damages.

The Court's reference to an aggregate injury that is "incapable of apportionment" should not be read for the proposition that the plaintiff has some discrete burden to prove that the injury is incapable· of apportionment before the defendant has the burden of establishing the causal relationship between the preexisting or subsequent injury and the claim of damages. There is no such discrete burden. The issue of apportionment will be present whenever the defendant, in response to the damage claimed, produces evidence of a preexisting or subsequent injury which the defendant asserts is the cause of some portion of the plaintiff's problems. There is no need for the court to make a preliminary determination that the injury is incapable of apportionment before imposing the burden of apportionment on the defendant. That burden is inherent in the defendant's claim that there should be apportionment.

who must be taken as found. These two instructions are, in my view, inconsistent. The deletion of the instruction on damage apportionment would eliminate this inconsistency. The instruction on pre- and post-accident problems that follows the "egg-shell" instruction in the basic civil jury charge remains a correct statement of the law:

I remind you, however, and caution you that defendant is not responsible for any pre-existing problems that you find worsened independently of the accident, or for any problems plaintiff experienced after the accident that you find did not result from the accident.