MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2014 ME 64
Docket:         Som-12-400
Argued          November 20, 2013
Decided:        May 6, 2014

Panel:          SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.[*]

PAULA BRATTON et al.

v.

HALSEY MCDONOUGH

GORMAN, J.

[¶1]  Paula Bratton and Daniel Hills Sr., individually and on behalf of their three minor children (collectively, the Brattons), appeal from a judgment of the Superior Court (Somerset County, *Cuddy, J.*) granting Halsey McDonough's motion for judgment as a matter of law as to some of their claims and in favor of McDonough based on a jury verdict on the remaining claims.  The Brattons argue that the trial court erred in excluding expert testimony on proximate causation; refusing to instruct the jury in accordance with *Lovely v. Allstate Insurance Co.,* 658 A.2d 1091, 1092-93 (Me. 1995); and granting judgment as a matter of law on the claims asserted on behalf of the two older children and on the counts for intentional infliction of emotional distress (IIED) and punitive damages asserted on

---

[*]  Levy, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

2

behalf of all three children. Because the trial court's errors created a fundamentally unfair trial, we vacate the jury's verdict and remand the case for a new trial.

## I. BACKGROUND

[¶2] The plaintiffs alleged the following facts and presented evidence in support of their allegations at trial. In September of 2004, Paula Bratton, Daniel Hills, and their two children, then ages three and one, moved into a house that they rented from Halsey McDonough. Shortly after the move, medical tests revealed that the children had elevated blood lead levels. The test results prompted Paula Bratton to conduct a home lead test that revealed the presence of lead in the paint at the property. When she contacted McDonough with the results of the home lead test, he dismissed her concerns and denied that the property contained any lead. Instead, he attributed the presence of lead in the dwelling to diesel trucks that traveled on Route 201. With this assurance, the Brattons continued to live at the property.

[¶3] Bratton and Hills had a third child in 2006. In 2008, medical tests indicated that the youngest child also had an elevated blood lead level. The Department of Health and Human Services became involved in the matter in 2008 pursuant to the Lead Poisoning Control Act, 22 M.R.S. §§ 1314-1329 (2013). The Department arranged for the home to be tested for the presence of lead, and the test

results revealed numerous lead hazards throughout the property. Late in 2008, the Department notified McDonough that he was required to relocate the Brattons pursuant to 22 M.R.S. § 1322.

[¶4] The relocation process did not go smoothly, largely, the Brattons allege, because McDonough refused to pay for the process. Although an initial letter from the Department informed McDonough that the Brattons had to be relocated by December 3, 2008, the process was not completed until March of 2009. In the interim, the Brattons lived at the property but cordoned off some of the rooms in order to limit the spread of lead paint dust.

[¶5] In November of 2009, the Brattons filed a twelve-count complaint alleging that the lead paint at the property had injured the children and seeking recovery from McDonough on a number of theories, including negligence and IIED, and seeking punitive damages.[1] After an extended period of discovery, a jury was selected on July 16, 2012. On the same date, the court issued rulings on outstanding motions in limine. In one ruling, the court precluded the Brattons from presenting portions of testimony from two of the Brattons' experts.

---

[1] At the time of trial, the parties and the court agreed that only the claims for negligence, IIED, and punitive damages remained. Although all of these remaining counts were brought by Paula Bratton and Daniel Hills individually and on behalf of the children, the parties do not raise on appeal the disposition of any claims concerning the parents. We therefore address the remaining counts only as they apply to the children.

4

[¶6]  After the close of the Brattons' case, McDonough moved for judgment as a matter of law on the children's negligence claims.  The court granted McDonough's motion with regard to the two older children, concluding that the evidence was insufficient to causally connect their conditions with the presence of lead in the home.  The court also granted judgment as a matter of law on the IIED count as to all three children based on its determinations that McDonough's conduct was not extreme and that there was no evidence indicating that any of the children suffered emotional distress.  When it granted judgment to McDonough on the IIED count, the court also granted judgment to McDonough on the Brattons' punitive damages count.

[¶7]  Based on its conclusion that there was a stronger connection between the youngest child's condition and his exposure to lead than the connection between the older children's condition and the lead, however, the court did allow the youngest child's negligence claims to proceed.  After deliberation, the jury unanimously answered the question posed to it—"Was the defendant, Halsey McDonough, negligent which negligence proximately or legally caused injury to [the youngest child]?"—in the negative.

## II. DISCUSSION

[¶8]   The Brattons' arguments on appeal can be separated into two categories: those arguments relevant to the negligence counts and those relevant to the IIED and punitive damages counts.

A.   Negligence

[¶9]  The Brattons argue that the court (1) abused its discretion by excluding expert testimony regarding proximate causation; (2) erred by ruling as a matter of law that they had failed to prove causation as to the negligence claims concerning the two oldest children; and (3) erred by failing to instruct the jury on proximate causation and damages pursuant to *Lovely,* 658 A.2d at 1092-93.  We address each challenge in turn.

1.   Expert Testimony

[¶10]  In their case in chief, the Brattons intended to present testimony from two expert witnesses—Richard Parent, Ph.D., a toxicologist, and Ronald Savage, Ed.D., a brain injury treatment specialist—to explain how the children's exposure to lead while residing at McDonough's property caused harm to the children.  The court limited the scope of both experts' testimony, however—precluding Dr. Parent from testifying that the children "have suffered a poisoning by lead" and precluding Dr. Savage from testifying about "the causation of any of the deficits of the . . . children as being caused by lead exposure"—as not sufficiently reliable

6

because both lacked a medical degree. "We review a court's foundational finding that expert testimony is sufficiently reliable for clear error." *Searles v. Fleetwood Homes of Penn., Inc.*, 2005 ME 94, ¶ 24, 878 A.2d 509.

[¶11] In excluding Dr. Parent's testimony, the court stated, "I am not at all comfortable . . . in terms of reliability that [Dr. Parent] goes beyond the area of his discipline and provides a causation as to this case and these children and this lead exposure." In so ruling, the court misapprehended the role of a toxicologist. Much of the jurisprudence in this area comes from the federal courts, where toxic tort litigation often takes place. In that arena, when the only argument against the admission of a toxicologist's opinion is the lack of a medical degree, the majority of federal courts admit the testimony as reliable evidence of causation. *See, e.g., Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) ("We have previously held that a toxicologist may testify that exposure to a chemical caused a person's symptoms and injuries."); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855-56 (3d Cir. 1990) (holding that the trial court erred in excluding a toxicologist's testimony "simply because the expert did not have the degree or training which the district court apparently thought would be most appropriate"); *see also* 2 Toxic Torts Practice Guide § 16:3 (West, Westlaw through Nov. 2013). Excluding Dr. Parent's expert testimony because of the nature of his advanced degree was clear error.

[¶12]   Dr. Savage is a brain injury specialist with a degree in special education.  At the hearing held in response to McDonough's challenge to his expected testimony, Dr. Savage acknowledged that he was not a medical doctor but explained that he had worked under the direction of a board-certified neurologist and psychiatrist, operated a center for neurological rehabilitation, run a day treatment program for people with brain injuries, and lectured on rehabilitation of individuals with brain injuries and on brain behavior relationships.  He testified that he had taken courses on brain injury, read extensively on the subject, was the only member on the editorial board of the Journal of Neurology who did not have a medical degree, and was certified by the American Academy for the Certification of Brain Injury Specialists.

[¶13]   Dr. Savage testified that his opinion was based on the children's medical history, which indicated the presence of lead in their blood, and on their psychological and neurophysiological testing.  He described how lead is absorbed into the body and how it damages the brain, and the effects of that damage on brain development.  Finally, he described how the children's injuries would affect their lives in the future, what types of continuing treatment they would need, and how much the treatment would cost.  Dr. Savage stated that, in formulating his opinion, he had considered factors other than the presence of lead—including the children's home environment and the father's alcoholism—but had not specifically

considered the parents' IQs. He testified that the contributing factors he considered did not account for all of the children's medical and psychological symptoms.

[¶14] The trial court determined that Dr. Savage's qualifications did not provide a level of reliability that would assist the fact-finder. Specifically, it found that "the core of his experience is his academic proficiency . . . in the field of determining the needs and deficits of children that [have] educational difficulties [and] in recommending treatments and developing plans or proposals for helping those children." The court went on to explain that Dr. Savage's "self-imposed focus and refocus on the area of brain injury are not, as far as this [c]ourt is concerned, sufficient to provide opinions which would assist the fact finder on [the issue of causation]." Based on this reasoning, the court precluded the Brattons from presenting any testimony by Dr. Savage on causation, but allowed his testimony concerning damages.

[¶15] The trial court erred by not allowing Dr. Savage to testify about causation. The record shows that Dr. Savage relied on established scientific principles with which he is clearly familiar. Further, pursuant to the test we set out in *Searles*, 2005 ME 94, ¶ 23, 878 A.2d 509, most of the indicia of scientific reliability are satisfied. As with Dr. Parent, any challenge to Dr. Savage's

qualifications is an issue of weight rather than admissibility. *See State v. Pineo*, 2002 ME 93, ¶ 6, 798 A.2d 1093.

[¶16] The court's order excluding the experts' testimony was based on its flawed application of our decision in *Tolliver v. Department of Transportation,* 2008 ME 83, 948 A.2d 1223, and on its erroneous understanding that an individual must have a medical degree in order to present expert testimony about lead exposure and toxicity. In *Tolliver*, we held that the trial court erred in admitting the testimony of an expert as to the cause of a pedestrian-vehicle accident not because the expert did not possess a particular degree, but because he had limited knowledge about the accident scene and the condition of the persons involved and therefore "lacked the foundation necessary to offer an opinion as to the cause of *this particular accident.*" *Id.* ¶¶ 34-35; *see also id.* ¶ 53 (Silver, J., dissenting in part and concurring in part) (stating that the issue of the expert's testimony "ultimately turns on weight rather than admissibility"). Here, in contrast, the trial court should have recognized McDonough's arguments about the proffered testimony from Drs. Parent and Savage as challenges to the weight of the opinions rather than to their admissibility.

2.      Judgment as a Matter of Law

[¶17]   In entering a judgment as a matter of law for McDonough on his M.R. Civ. P. 50(a) motion concerning the causes of action brought on behalf of the two older children, the court stated:

> The proximate causation evidence which came from Dr. Salvato made it abundantly clear to the [c]ourt by his descriptive phraseology as to the involvement of lead that it was a contributing factor, but he made it clear in his testimony . . . that he really could not say how much or how little each of these factors played with respect to [the two older children].

The testimony to which the court referred was one answer that John A. Salvato, M.D., a pediatrician who had treated all three children, provided during the course of his trial deposition.  In other portions of his testimony, however, Dr. Salvato stated that the two older children's developmental and behavioral problems were explainable in part by their exposure to lead.  By focusing on the portion of Dr. Salvato's testimony that did not support the Brattons' claims, the court demonstrated that it was reviewing the evidence in a light most favorable to McDonough rather than to the Brattons.  In so doing, the court erred.  *See Lewis v. Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912 (stating that a court may not grant a motion for judgment as a matter of law if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim"); *Fournier v. Rochambeau Club*, 611 A.2d 578,

579 (Me. 1992) (stating that a plaintiff is required to prove that a defendant's negligence was a proximate cause, but not necessarily the sole proximate cause, of a plaintiff's injury).

### 3. Jury Instructions

[¶18] The Brattons proposed an instruction that followed our language in *Lovely*. *See* 658 A.2d at 1092-93. They argued that *Lovely* requires a trial court to instruct the jury that the burden of apportioning damages to independent or subsequent causes falls on the defendant and does not require that a plaintiff disprove the defendant's assertions of alternative causes for the plaintiff's injuries. Further, the Brattons specifically sought an instruction based on *Lovely* "that makes it clear that it is [McDonough's] burden to differentiate causation on prior conditions." The trial court, however, declined to give a *Lovely* instruction, reasoning that

> [i]t is not an issue of mitigation or the burden to mitigate or burden to apportion, I think it is more in the context of an independent event as opposed to a mitigating event . . . . I intend [the instruction] to be focused toward independent events and that's where I am going to leave it.

Instead, the court instructed the jury that

> where there have been independent events affecting the Plaintiff's condition before or after the incident which gave rise to this trial, you must separate out damages attributable to the prior or subsequent events, and award the Plaintiff only those damages you find to have been proximately caused by the Defendant's fault.

After it began deliberations, the jury asked the court to clarify the definition of proximate cause, to which the court responded, "proximate means something that played a substantial part," and referred the jury to the written instructions.

[¶19] *Lovely* stands for two related negligence principles. The first places the burden of apportioning *damages* on a defendant who seeks to limit liability on the basis of a preexisting or a subsequent injury. *See, e.g., Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 41, 823 A.2d 540 (Alexander, J., concurring in part and dissenting in part) (discussing *Lovely*, 658 A.2d at 1092-94). The second requires that when a defendant asserts that an independent factor, rather than the defendant's acts, caused the plaintiff's harm, it is the defendant's burden to prove that independent *causation* by a preponderance of the evidence. *See, e.g., Merrill v. Sugarloaf Mountain Corp.,* 2000 ME 16, ¶ 12, 745 A.2d 378 (citing *Lovely,* 658 A.2d at 1093-94) (Lipez, J., concurring); *see also* Alexander, *Maine Jury Instruction Manual* § 7-83 cmt. at 7-114 (2014 ed.) ("A defendant, asserting that there is an independent intervening event that excuses liability, has the burden of proving the event and its causation of plaintiff's damages."). In short, the principle that the party affirmatively asserting a theory bears the burden of proving that theory has been applied both to the element of causation and to the element of damages.

[¶20]   The trial court must give instructions that are applicable to the evidence in the case. *Isaacson v. Husson Coll.*, 332 A.2d 757, 762 (Me. 1975).  A party is entitled to a requested instruction if it "(1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions." *Frustaci v. City of S. Portland,* 2005 ME 101, ¶ 15, 879 A.2d 1001 (quotation marks omitted).  The Brattons' proposed instructions satisfied all four criteria.   First, the Brattons suggested that the court instruct the jury that "if the Plaintiff has an injury that preexist[s] the Defendant's wrongdoing . . . it is the defendant's burden to apportion damages" and that "it is the Defendant's burden to differentiate causation [arising from] prior conditions."   These are accurate restatements of *Lovely*.   658 A.2d at 1092-93.   Second, McDonough presented evidence showing that the injuries to the children were caused by factors independent of lead poisoning, including genetics, the father's alcoholism, and the mother's depression.  Because giving a *Lovely* instruction would not have been misleading or confusing, and because the principle it explains was not otherwise addressed in the court's instructions, the third and fourth criteria are also satisfied.

[¶21]  Instead of giving the requested *Lovely* instruction, however, the court gave an instruction that advised the jury to "separate out damages attributable to the prior or subsequent events, and award the Plaintiff only those damages you find

to have been proximately caused by the Defendant's fault," making no reference to McDonough's burden to prove that damages were caused by the independent factors. The Brattons were entitled to the proposed instruction, and the trial court erred when it failed to give it. *Cf. Gould v. Bangor & Aroostook R.R. Co.*, 292 A.2d 837, 843 (Me. 1972) (ordering new trials because the jury instructions "were so inadequate and misleading as to leave the jury without the guidance essential to its task").

B.      Intentional Infliction of Emotional Distress and Punitive Damages

[¶22]  To recover on a claim of IIED, a plaintiff must show (1) either that the defendant intentionally or recklessly inflicted severe emotional distress or that his or her conduct was substantially certain to inflict severe emotional distress, (2) that the defendant's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious" and "utterly intolerable in a civilized community," (3) that the defendant's conduct caused the plaintiff's emotional distress, and (4) that the emotional distress was "so severe that no reasonable person could be expected to endure it." *Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707 (quotation marks omitted). On appeal from a judgment as a matter of law, we view the evidence in the light most favorable to the party opposing the motion, and will not affirm the grant of such a motion if "any reasonable view of the evidence could sustain a verdict for the opposing party

pursuant to the substantive law that is an essential element of the claim." *Lewis*, 1997 ME 12, ¶ 6, 688 A.2d 912.

[¶23] Here, the court granted the motion for judgment as a matter of law on the IIED claims because it determined that the evidence did not show that McDonough's conduct was extreme or that the children suffered severe emotional distress. Viewed in the light most favorable to the plaintiff, the evidence shows that McDonough allowed a family with young children to live in a house that exposed the children to toxic levels of lead for several years. It further shows that, even after the house had been declared a lead hazard by the State and although McDonough had a legal duty to relocate the Brattons, he failed to do so for four months. We cannot say as a matter of law that no reasonable juror could find McDonough's actions extreme and outrageous. *See Colford v. Chubb Life Ins. of Am.*, 687 A.2d 609, 616 (Me. 1996) ("Where reasonable people may differ, it is for the jury . . . to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (alteration omitted) (quotation marks omitted)).

[¶24] In addition, the Brattons testified that the children were scared and confused when their home was posted as "not safe for children." They testified that after sections of the house had been cordoned off to prevent lead dust from spreading, the children could not play with their toys, run around the house, go into

one of the bedrooms, or touch any of their things that were in that bedroom. They would scream "the poison is going to kill us" if a child attempted to enter the closed-off area. Again, because we cannot say that no reasonable juror could find that McDonough's conduct was extreme and outrageous and that this conduct caused the children severe emotional distress, the court's judgment as a matter of law on the IIED count must be vacated. *See* Restatement (Second) of Torts § 46 cmt. j (1965) ("It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed."); *see also German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 571-72 (S.D.N.Y. 1995), *clarified on other grounds*, 896 F. Supp. 1385 (S.D.N.Y. 1995) (concluding that the plaintiffs pleaded their IIED cause of action sufficiently where landlords knowingly exposed tenants to lead paint, "a highly toxic substance to children," thereby putting them at risk for physical and mental injuries (quotation marks omitted)).

[¶25] With the IIED count restored, we must also consider whether the court erred when it granted judgment as a matter of law on the punitive damages count. "[P]unitive damages are available based upon tortious conduct only if the defendant acted with malice." *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). Malice can be express or it can be demonstrated by conduct that "is so outrageous that malice toward a person injured as a result of that conduct can be

implied." *Id.* Implied malice, however, cannot be established by the defendant's "mere reckless disregard of the circumstances." *Id.*

[¶26] The evidence, taken in the light most favorable to the Brattons, shows that McDonough affirmatively represented to them that there was no lead in the house when he knew that lead was indeed present. The nature of this intentional misrepresentation could be sufficient for a fact-finder to find implied malice. Although McDonough presented evidence to rebut this assertion, this factual dispute should be settled by the jury. *Cf. Gagne v. Stevens*, 1997 ME 88, ¶ 8, 696 A.2d 411.

## C. Conclusion

[¶27] In sum, the court improperly excluded the Brattons' qualified expert witnesses, which constituted clear error, *see Searles*, 2005 ME 94, ¶ 24, 878 A.2d 509; it erroneously entered judgment as a matter of law for McDonough on the negligence claims of the two older children, as well as the IIED and punitive damages claims of all three children, by failing to view the evidence in the light most favorable to the Brattons, *see Lewis*, 1997 ME 12, ¶ 6, 688 A.2d 912; and it improperly shifted the burden of proof onto the Brattons to disprove McDonough's independent causation theories and refused to give the jury a proper and requested instruction, *see Merrill,* 2000 ME 16, ¶ 14, 745 A.2d 378. That the errors concerning the experts were made on the eve of trial compounded their effect, and

those errors, when considered with the other erroneous rulings, materially and substantially prejudiced the Brattons. *Cf. Wheeler v. White*, 1998 ME 137, ¶¶ 11-12, 714 A.2d 125 (Lipez, J., dissenting) (noting that the trial court's erroneous jury instruction on the issue of causation was compounded by its misstatement of the plaintiff's burden of proof). For all of these reasons, the Brattons are entitled to a new trial on the claims they brought on behalf of their children in Counts I, II, III, XI, and XIII.

The entry is:

Judgment vacated. Remanded for a new trial.

---

**On the briefs:**

Melissa A. Hewey, Esq., and Michael L. Buescher, Esq., Drummond Woodsum, Portland, for appellants Paula Bratton et al.

Martica S. Douglas, Esq., Douglas, Denham, Buccina & Ernst, Portland, for appellee Halsey McDonough

**At oral argument:**

Melissa A. Hewey, Esq., for appellant Paula Bratton, et al.

Martica S. Douglas, Esq., for appellee Halsey McDonough