MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 38
Docket:       Pen-18-10
Argued:       October 11, 2018
Decided:      March 12, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ROBBIE M. NASON

v.

TIMOTHY PRUCHNIC et al.

JABAR, J.

[¶1]   Timothy Pruchnic, M.D., and Eastern Maine Medical Center (collectively, excepted where indicated otherwise, Pruchnic) appeal from a judgment entered after a jury trial in the Superior Court (Penobscot County, *A. Murray, J.*) in favor of Robbie M. Nason on his claim for medical malpractice against Pruchnic.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts, including all justifiable inferences, are drawn from the trial record as viewed in the light most favorable to the jury verdict. *See Hansen v. Sunday River Skiway Corp.*, 1999 ME 45, ¶ 5, 726 A.2d 220.

[¶3]  In July 2013, Nason fractured the scaphoid bone of his right wrist while working.  Nason was referred to Pruchnic, a hand surgeon employed at

2

Eastern Maine Medical Center, who determined that surgical intervention was required for proper healing. Pruchnic performed a surgical implantation of a compression screw in Nason's scaphoid bone in September 2013.

[¶4] Throughout the next few months, Pruchnic completed several imaging studies on Nason's wrist, but failed to discover any potential problems. Believing Nason's wrist to be healing properly, Pruchnic had Nason begin physical therapy, where he experienced pain and a distinct clicking feeling in his wrist. Eventually, Pruchnic realized that the screw he had placed in Nason's wrist was protruding from the scaphoid bone and into the surrounding cartilage.

[¶5] Due to Nason's extended absence from work, his workers' compensation agent scheduled him to be examined by another surgeon. Upon examining Nason, the surgeon immediately recognized that the screw was protruding from Nason's scaphoid bone and performed surgery to remove the screw, during which the surgeon observed extensive damage to the cartilage of Nason's right wrist. The surgeon performed a second surgery in an attempt to clean up as much damage as possible. Despite these efforts, Nason continued to experience pain in his right wrist, and several injections proved ineffective.

Ultimately, the surgeon completed a third surgery on Nason, removing his scaphoid bone along with two other bones.

[¶6]   Nason brought an action against Pruchnic and Eastern Maine Medical Center, alleging negligence in Pruchnic's attempted surgical repair of his scaphoid bone, leaving him with permanent pain and impairment of his wrist.  The jury unanimously found Pruchnic and Eastern Maine Medical Center negligent and awarded damages of $2,000,000.[1]  Pruchnic moved for a new trial, or in the alternative, remittitur, on the ground that the jury verdict was excessive.  The Superior Court denied Pruchnic's motion.  This appeal followed.

## II.  DISCUSSION

[¶7]   Pruchnic argues that he was entitled to a new trial, or in the alternative, remittitur, on the ground that the jury awarded excessive damages. Pruchnic also argues that the trial court erred by giving a jury instruction pursuant to *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091 (Me. 1995), admitting only redacted portions of radiology reports, and instructing the jury to disregard mentions of workers' compensation.

---

[1]   The trial court instructed the jury, by agreement, that Pruchnic's employer, Eastern Maine Medical Center, was liable for any negligence that it found on the part of Pruchnic.

4

A.    Excessive Damages

[¶8]  The assessment of damages "is the responsibility of the jury and generally its judgment must stand.  However, the trial court may intervene to set aside an excessive verdict if the moving party is able to demonstrate that the jury acted under some bias, prejudice, or improper influence, or has made some mistake of fact or law."  *Seabury-Peterson v. Jhamb*, 2011 ME 35, ¶ 18, 15 A.3d 746 (alteration and citation omitted) (quotation marks omitted).  Because the trial court has the opportunity to observe the trial, "it is in a far better position than an appellate court to determine whether the damages are rationally supported by the evidence and whether the jury had an improper motive for awarding excessive damages."  *Id.* ¶ 19.  Accordingly, we review a trial court's refusal to grant a new trial or remittitur based on an allegedly excessive jury verdict for a clear and manifest abuse of discretion.  *See Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1993).

[¶9]  In reviewing a claim that a jury verdict is excessive, the trial court first "examines the evidence in the light most favorable to the verdict" to determine if the verdict bears a rational relationship to the evidence. *Seabury-Peterson*, 2011 ME 35, ¶ 19, 15 A.3d 746.  A rational relationship exists if there is any competent evidence in the record to support the verdict.  *See*

*Bourette v. Dresser Indus., Inc.*, 481 A.2d 170, 174 (Me. 1984). If no rational relationship exists between the evidence in the record and the damages award, then the trial court must evaluate the jury's basis for awarding the allegedly excessive damages. *See Seabury-Peterson*, 2011 ME 35, ¶ 19, 15 A.3d 746. If an excessive award stems from an improper basis, "such as passion or prejudice, a new trial is the appropriate remedy." *Id.* However, when the excessive award stems from a good faith mistake, remittitur to the maximum amount that rationally could be found by a jury is the appropriate remedy. *Id.*

[¶10] Contrary to Pruchnic's contentions, there is competent evidence in the record to support the trial court's determination that there was a rational relationship between that evidence and the jury's damage award. Due to Pruchnic's negligence, three bones were removed from Nason's wrist, leaving him permanently and significantly impaired. This impairment has caused demonstrated changes in Nason's daily life and activities. Nason has further experienced emotional distress based on a fear of unemployability should he lose his job and a reduced self-worth due to his inability to engage in activities as he did before the surgery performed by Pruchnic. Moreover, because of the impairment, Nason was required to take a new position at work, resulting in the loss of significant overtime wages.

6

[¶11] Because the court could reasonably determine that the evidence bears a rational relationship to the jury's award of $2,000,000, it was not a clear and manifest abuse of discretion for the court to deny Pruchnic's motion for a new trial, or in the alternative, remittitur.[2] We may not intervene merely because of the amount of the award or because another jury may have awarded less. *See Wallace v. Coca-Cola Bottling Plants, Inc.*, 269 A.2d 117, 122 (Me. 1970). This is particularly true where, as here, the jury was given a general verdict form, making it impossible to specifically determine the components of damages assessed by the jury that led to the overall verdict. *See Withers v. Hackett*, 1999 ME 117, ¶ 8, 734 A.2d 189 ("Where damages cannot be specifically calculated from the record and are based on the subjective judgment of the fact finder, the issue is properly one for a jury.").

B.      The *Lovely* Jury Instruction

[¶12] Pruchnic next contends that it was error for the trial court to give a jury instruction pursuant to *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091

---

[2] As an additional argument for a new trial, Pruchnic contends that the trial court's exclusion of references to Nason's smoking in his medical records was error. Pruchnic argues that had the jury been apprised of Nason's smoking, the jury would not have awarded such significant damages because smoking shortens a person's life expectancy and reduces the person's ability to heal from trauma. However, Pruchnic failed to designate an expert to testify on the issue, and despite objecting to the court's redaction of the medical records, failed to provide an argument as to why the evidence was relevant and admissible or an offer of proof to preserve his objection. *See* M.R. Evid. 103(a)(2); *State v. Williams*, 462 A.2d 491, 492 (Me. 1983). Thus, we find no abuse of discretion in the trial court's exclusion of this evidence or denial of a new trial based on its exclusion.

(Me. 1995), because the evidence adduced at trial did not warrant such an instruction. A trial court must give the jury instructions that are generated by the evidence presented in the case. *See Bratton v. McDonough*, 2014 ME 64, ¶ 20, 91 A.3d 1050. We will not disturb a judgment on the ground that a jury instruction was given in error unless, viewing the jury instructions in their entirety, the "instructions fail to inform the jury correctly and fairly in all necessary respects of the governing law." *Niedojadlo v. Cent. Me. Moving & Storage Co.*, 1998 ME 199, ¶ 8, 715 A.2d 934. When, as here, an objection to the trial court's jury instructions is properly preserved, "we will vacate the [trial] court's judgment only if the erroneous instruction resulted in prejudice." *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 12, 98 A.3d 221.

[¶13] In *Lovely*, we explained that the "single injury rule places any hardship resulting from the difficulty of apportionment on the proven wrongdoer and not on the innocent plaintiff." 658 A.2d at 1093; *see also Palleschi v. Palleschi*, 1998 ME 3, ¶ 3, 704 A.2d 383 ("Our decision in *Lovely* . . . makes clear the policy choice that, as between an innocent victim and a tortfeasor, the law burdens the wrongdoer with the difficulties of apportionment."). "The issue of apportionment will be present whenever the defendant, in response to the damage claimed, produces evidence of a

8

preexisting or subsequent injury which the defendant asserts is the cause of some portion of the plaintiff's problems." *Lovely*, 658 A.2d at 1094 (*Lipez, J.*, concurring).

[¶14] The evidence presented to the jury, including that presented by Pruchnic, raised the issue of apportionment such that a *Lovely* instruction was appropriate. In his opening statement, Pruchnic pointed out that "there were other abnormalities in [Nason's] wrist which have nothing to do with the screw." Pruchnic's expert testified that the extent of injury to Nason's wrist could be due to wear and tear from an active life, degenerative changes, and the potential trauma from having multiple surgeries. On cross-examination of the surgeon who removed the screw from Nason's wrist, Pruchnic developed testimony that the damage to Nason's wrist could have been due to early arthritis or trauma from the surgery. Finally, during closing arguments Pruchnic stated that "there's other things going on in Mr. Nason's hand in different areas of the wrist," and that there was "evidence of cysts and a degenerative process even before the screw [was] placed." The evidence and arguments presented by Pruchnic raised the issue of a preexisting or subsequent injury causing at least some portion of Nason's problems. *See id.* Thus, it was not error for the court to instruct the jury pursuant to *Lovely*.

C. Radiology Reports

[¶15] Pruchnic also argues that he was prejudiced by the trial court's redaction of several radiology reports in which the radiologists offered opinions as to potential causes of Nason's wrist problems based on their review of Nason's imaging studies. Pruchnic asserts that the records were admissible in their entirety pursuant to 16 M.R.S. § 357 (2018), or, alternatively, as facts forming the basis of an expert's opinion and statements made for medical diagnosis and treatment. *See* M.R. Evid. 703, 803(4).

[¶16] Section 357, in its relevant part, states that

> [r]ecords kept by hospitals and other medical facilities licensed under the laws of this State . . . shall be admissible[] as evidence in the courts of this State so far as such records relate to the treatment and medical history of such cases and the court shall admit copies of such records, if certified by the persons in custody thereof to be true and complete, but nothing therein contained shall be admissible as evidence which has reference to the question of liability.

16 M.R.S. § 357.

[¶17] Section 357 "provides a method of authenticating the hospital records and provides an exception to Rule 802 of the Maine Rules of Evidence, which, as a general matter, bars the admission of hearsay evidence." *State v. Jones*, 2019 ME 33, ¶ 12, --- A.3d ---. However, this does not "override the application of other Maine Rules of Evidence not pertaining to hearsay." *Id.*

¶ 13; *see also State v. Caron*, 2011 ME 9, ¶ 15, 10 A.3d 739 ("Medical records may, and often must, be admitted in redacted form. . . ."); *Cyr v Hurd*, 554 A.2d 345, 346-47 (Me. 1989). Rather, "for the proper admission of a hospital record pursuant to section 357, the party offering the record must (A) establish that the report is relevant to the matter before the court; (B) satisfy the requirements of section 357; and (C) establish that the Maine Rules of Evidence do not otherwise require the exclusion of the medical record." *Jones*, 2019 ME 33, ¶ 14, ---A.3d --- (internal citations omitted).

[¶18] Here, there is no doubt that the documents at issue were medical records and were properly authenticated. Therefore, the section 357 exception to the hearsay rules applied to any parts of the documents that were related to treatment and medical history.[3] *See id.* ¶ 15.

[¶19] Even though the radiologists reports were medical records within the purview of section 357, the court excluded the reports as the opinions of nondesignated experts. *See* M.R. Evid. 702; *State v. Marden*, 673 A.2d 1304, 1311 n.5 (Me. 1996) (stating that "opinion testimony that . . . is not within the common knowledge of an ordinary person . . . may not be given by a lay

---

[3] Because, in accordance with section 357, the medical records are not subject to the general rule that excludes hearsay, we do not reach Pruchnic's other arguments as to whether the records could be admissible pursuant to an exception to the hearsay rule.

witness"). The portions of the records that Pruchnic sought to admit were the statements of nontreating and nontestifying radiologists offering their expert opinions as to potential causes of visual findings. Because Pruchnic failed to designate the radiologists as experts, the court acted correctly in excluding, without reference to section 357, those portions of the records containing the undesignated expert witnesses' opinions. *See Mitchell v. Kieliszek*, 2006 ME 70, ¶ 19, 900 A.2d 719 ("We have consistently held that it is an appropriate exercise of the trial court's discretion to exclude expert testimony when the party seeking to elicit the opinion failed to designate the witness as an expert . . . ."); M.R. Civ. P. 16A(a), (b).

D.    Worker's Compensation

[¶20]  Lastly, Pruchnic argues that the trial court erred by instructing the jury to disregard all references to workers' compensation after allowing those references to be made throughout the trial. This, Pruchnic argues, confused the jury and allowed Nason a double recovery.

[¶21]  Pruchnic did not object to the testimony regarding workers' compensation, nor did he object to the jury instruction given by the court. "When the claimed error has not been preserved, we review the instruction for obvious error." *Morey v. Stratton*, 2000 ME 147, ¶ 10, 756 A.2d 496. An error

is obvious only when it "constitutes such a serious injustice that reversal is necessary because we could not in good conscience let the judgment stand." *Coyne v. Peace*, 2004 ME 150, ¶ 14, 863 A.2d 885.

[¶22] The collateral source doctrine typically precludes the admission of evidence of workers' compensation because "a plaintiff who has received compensation for [his] damages from sources independent of the tortfeasor remains entitled to a full recovery [from the tortfeasor]." *Grover v. Boise Cascade Corp.*, 2004 ME 119, ¶ 24, 860 A.2d 851 (quotation marks omitted). However, such evidence "may be admissible for purposes other than mitigation of damages that are recoverable from the tortfeasor." *Id.* Where evidence of a collateral source comes to the attention of the jury, "[a] curative instruction is often sufficient to avert the danger of prejudice . . . ." *Theriault v. Swan*, 558 A.2d 369, 371 (Me. 1989).

[¶23] Here, the only references to workers' compensation were elicited to explain why Nason left Pruchnic's care. The court, in response, instructed the jury that it must "completely disregard" references to workers' compensation, and that it "may not consider what benefits were received, what they amounted to, or what rights existed based upon the payment of those benefits." We must assume that the jury followed the court's instruction, which

was straight-forward and—contrary to Pruchnic's assertion—not confusing. *See id.*; *State v. Franzen*, 461 A.2d 1068, 1073 (Me. 1983) ("We cannot presume that the jury was too ignorant to comprehend the law given to them in [the] case and to apply the same to the facts . . . ."). Therefore, we find no obvious error in the court's workers' compensation jury instruction.

The entry is:

Judgment affirmed.

---

Ernest J. Babcock, Esq. (orally), Adria Y. LaRose, Esq., and Janna Gau, Esq., Eaton Peabody, Bangor, for appellants Timothy Pruchnic and Eastern Maine Medical Center

Jodi L. Nofsinger, Esq. (orally), and Taylor A. Asen, Esq., Berman & Simmons, P.A., Lewiston, for appellee Robbie M. Nason

Penobscot County Superior Court docket number CV-2015-137
FOR CLERK REFERENCE ONLY