ENTERED JAN 1 4 2015 Mev

JAW-CMM-01-05-15

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-12-63

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 05 2015

RECEIVED

LAURIE O. THWAITES, as Personal
Representative of the ESTATE OF
GAIL OSGOOD,

Plaintiff

v.

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT

BOWDOIN MEDICAL GROUP,
(to include JEFFREY SAFFER, M.D.)
et al.,

Defendants

Defendant Bowdoin Medical Group ("BMG") moves the court for partial summary judgment on count III of plaintiff's amended complaint for fraud and punitive damages in this medical malpractice case. For the following reasons, the motion is denied.

## PROCEDURAL HISTORY

In February 2012, Gail Osgood filed a notice of claim as required under the Maine Health Security Act against various medical providers, including BMG, alleging that they negligently failed to follow up on an MRI that suggested recurrence of metastatic cancer. After Ms. Osgood's death in 2012, claimant filed an amended notice of claim naming Laurie Thwaites as the substituted claimant.

After the screening panel returned its findings, plaintiff filed a complaint in this court on March 18, 2013, which was amended on May 31, 2013. Defendant BMG moved for partial summary judgment on October 30, 2014.

## FACTS

The following facts are presented in the light most favorable to plaintiff as the nonmoving party.[1] Dr. Jeffrey Saffer was Gail Osgood's primary care physician. (Def.'s Supp. S.M.F. ¶ 11.) He was aware that Ms. Osgood had a history of breast cancer. (Def.'s Supp. S.M.F. ¶ 12.) In 2010, Dr. Saffer referred Ms. Osgood to Dr. Michael J. Totta to evaluate her complaints of back pain and spasms. (Def.'s Supp. S.M.F. ¶ 11.) On May 4, 2010, Dr. Saffer received a fax of a progress report from Dr. Totta dated April 27, 2010 that described Ms. Osgood's musculoskeletal pain as "the worst pain she has ever had in her life." (Pl.'s Add. S.M.F. ¶ 2.) Dr. Saffer was aware that intense musculoskeletal pain could be consistent with metastatic bone cancer in a patient with a history of breast cancer. (Pl.'s Add. S.M.F. ¶ 3.)

Dr. Totta ordered a lumbar MRI, which was interpreted on April 30, 2010 by a Dr. Ralston. (Def.'s Supp. S.M.F. ¶ 13; Pl.'s Add. S.M.F. ¶ 4.) Dr. Saffer received the MRI report on May 4, 2010. (Pl.'s Add. S.M.F. ¶ 5.) In his 35 years of practice, Dr. Saffer had only seen a handful of MRI reports suggestive of the serious conditions suggested by Ms. Osgood's MRI report.

---

1 Plaintiff's additional facts are deemed admitted because defendant has not filed a reply statement of material facts. *See* M.R. Civ. P. 56(h)(4).

2

(Pl.'s Add. S.M.F. ¶ 7.) Dr. Ralston states, "the current findings are highly worrisome for diffuse metastatic disease . . . . The alternative diagnosis would be some sort of myeloproliferative disorder or myelofibrosis." (Def.'s Supp. S.M.F. ¶ 15, as qualified; Pl.'s Add. S.M.F. ¶ 4.) Dr. Saffer knew that these alternative diagnoses could be detected by a simple blood test, but he never ordered one. (Pl.'s Add. S.M.F. ¶ 8.) Dr. Saffer also never contacted Dr. Ralston to discuss the findings of the MRI report. (Pl.'s Add. S.M.F. ¶ 6.)

On June 15, 2010, Ms. Osgood returned to Dr. Totta for a follow-up, and at that visit, Dr. Totta read Dr. Ralston's MRI report for the first time. (Pl.'s Add. S.M.F. ¶ 10.) The following day, Dr. Totta and Dr. Saffer spoke by phone and agreed that Dr. Saffer would refer the MRI report to Dr. Tracey Weisberg, an oncologist, to provide an opinion regarding the presence of cancer and whether additional testing was necessary. (Pl.'s Add. S.M.F. ¶ 13.)

Dr. Saffer and Dr. Weisberg differ in their testimony regarding the timing and substance of their conversation. According to Dr. Saffer, he called Dr. Weisberg within 24 hours of receiving the June 16 call from Dr. Totta but did not get a response. (Def.'s Supp. S.M.F. ¶ 20.) Dr. Saffer testified that he followed up with another call about a week later and spoke with Dr. Weisberg about the MRI report. (Def.'s Supp. S.M.F. ¶ 20, as qualified.) The two doctors spoke again in mid-July, and Dr. Weisberg told Dr. Saffer that Ms. Osgood's type of cancer rarely recurred. (Def.'s Supp. S.M.F. ¶ 21, as

3

qualified.) According to Dr. Saffer, Dr. Weisberg assured him that Ms. Osgood would need no additional testing. (Def.'s Supp. S.M.F. ¶ 34.)

According to Dr. Weisberg, Dr. Saffer first contacted her about reviewing the MRI results on July 4, 2010. (Def.'s Supp. S.M.F. ¶ 36.) She testified that she did not reconnect with Dr. Saffer about the MRI until the end of July. (Def.'s Supp. S.M.F. ¶ 36.) Although Dr. Weisberg agrees that she told Dr. Saffer that the type of cancer rarely metastasized, she claims she also told him that Ms. Osgood needed a full workup. (Def.'s Supp. S.M.F. ¶ 35.) Within a week of speaking with Dr. Saffer, on August 4, 2010, Dr. Weisberg went on a three-week vacation to Spain. (Def.'s Supp. S.M.F. ¶ 37.)

Dr. Saffer did not inform Ms. Osgood about the consultation with Dr. Weisberg until Ms. Osgood called his office four or five days later. (Pl.'s Add. S.M.F. ¶ 15.) When she called, according to Dr. Saffer "it was relayed through one of our RNs that the oncologist reviewed the scan and felt that nothing further needed to be done at this point in time." (Pl.'s Add. S.M.F. ¶ 15.) Dr. Weisberg testified that she did not contact Ms. Osgood directly because she did not want to "implicate" her colleagues in what she considered to be their unnecessary three-month delay in addressing her potential cancer. (Pl.'s Add. S.M.F. ¶ 16.) Dr. Weisberg hoped that Dr. Saffer and Dr. Totta would refer Ms. Osgood to her office for cancer screening. (Pl.'s Add. S.M.F. ¶ 16.) Dr. Saffer never informed Ms. Osgood that the April MRI was suggestive of metastatic cancer. (Pl.'s Add. S.M.F. ¶ 14.)

4

On August 19, 2010, Ms. Osgood arrived at Maine Medical Center's Emergency Department, appearing confused, weak, and complaining of extreme pain. (Pl.'s Add. S.M.F. ¶ 17.) She was diagnosed with diffuse metastatic cancer in her thoracic, lumbar, and sacral spine based on highly elevated blood calcium levels and MRI findings. (Pl.'s Add. S.M.F. ¶ 17.)

## DISCUSSION

### 1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

5

## 2. Fraud Claim (Count III)

Defendant first challenges whether plaintiff can demonstrate a prima facie case of fraud. The elements of fraud are: (1) a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing reliance; and (5) defendant justifiably relied on the representation as true and acted on it to the defendant's detriment. *Me. Eye Care Assocs. P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707.

At the time Dr. Saffer made the alleged false representation, he had the MRI report from Dr. Ralston and had spoken with Dr. Weisberg, who advised that Ms. Osgood needed additional screening. Thus, when Dr. Saffer or his staff notified Ms. Osgood that no further action was necessary, a fact-finder could conclude that he knew that statement was false. When Dr. Saffer made the statement, he had already failed to communicate with Ms. Osgood about the MRI results for three months. A fact-finder could conclude that Dr. Saffer made the false statement to cover for his own negligent delay in addressing the concerning MRI report. Finally, Ms. Osgood apparently did justifiably rely on Dr. Saffer's advice because she was not screened for cancer or referred to a cancer specialist before her symptoms became severe in mid-August.

6

### 3. Punitive Damages

Defendant next argues that, based on the facts in the summary judgment record, plaintiff cannot show that defendant acted with "malice" necessary to support an award of punitive damages. The landmark case on punitive damages in Maine is *Tuttle v. Raymond*, 494 A.2d 1353 (Me. 1985). In *Tuttle*, the Law Court refined the previously broad application of punitive damages, concluding that they "should be available based only upon a limited class of misconduct where deterrence is both paramount and likely to be achieved." *Id.* at 1360. The court adopted a "malice" standard for an award of punitive damages, which is met by showing "the defendant's tortious conduct is motivated by ill will toward the plaintiff." *Id.* at 1361. The court also explained, however, that punitive damages are available where "deliberate conduct by the defendant . . . is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* Thus, under the implied malice standard, in this case plaintiff must demonstrate (1) intentional conduct by Dr. Saffer that (2) is so outrageous that malice can be implied.

In *Bratton v. McDonough*, the Law Court considered whether evidence which suggested that a landlord affirmatively represented to his tenants that there was no lead in a house when he knew there was lead present was sufficient to support an award of punitive damages. 2014 ME 64, ¶ 26, 91 A.3d 1050. The court concluded, "the nature of this intentional

7

misrepresentation could be sufficient for a fact-finder to find implied malice." *Id.* ¶ 26.

According to the defendant, the evidence does not support a finding that Dr. Saffer intended to misrepresent anything to Ms. Osgood. As discussed above, however, Dr. Weisberg's testimony establishes that Ms. Osgood needed a full workup, but Dr. Saffer told Ms. Osgood that no further action was necessary. Thus, there is evidence of an intentional misrepresentation.

Defendant next argues that there is insufficient evidence to support a finding of implied malice. At most, defendant argues, the evidence shows that this is a case of a simple miscommunication and delay in which the doctors involved "dropped the ball." Taking the evidence as a whole, defendant argues that there can be no finding of implied malice to support an award of punitive damages.

Although defendant's reading of the evidence is plausible, a fact-finder could reasonably draw a different inference. There is evidence that Dr. Saffer knew of a very concerning MRI and report from Dr. Ralston and that he failed to timely follow up with Ms. Osgood about the results. After months passed without action, Dr. Saffer may not have wanted to disclose the MRI results to Ms. Osgood because she might become upset at the unnecessary delay. A fact-finder could infer that Dr. Saffer intentionally misrepresented to Ms. Osgood that no further action was necessary in the hope that she would

8

never learn about his role in the mismanagement of the MRI results. Just as in *Bratton*, the potential consequences of this type of misrepresentation could be severe. Suppressing the results of a highly worrisome MRI in an attempt to hide one's own negligent conduct could be considered sufficiently outrageous to support an award of punitive damages. Defendant is not entitled to judgment as a matter of law on plaintiff's request for punitive damages.

The entry is:

> Defendant Bowdoin Medical Group's Motion for Partial
> Summary Judgment on Count III of Plaintiff's Amended
> Complaint is DENIED.

Date: January 5, 2015

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Owen Pickus Esq/Elliott Epstein
                                    Esq.
Defendants Bowdoin Medical
          Jeffrey Saffer MD
          Martin's Point- Daniel Rapaport
                                    Esq
Defendants Michael Totta MD
          OA Centers-Mark Lavoie Esq

Defendants Tracey Weisberg MD
          Maine Center for Cancer Medicine
          -Karen Frink Wolf Esq