STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss                                     CIVIL ACTION
                                                  DOCKET NO. CV-15-156


BETH C. HARTFORD and
BRENT HARTFORD,

              Plaintiffs

v.                                                ORDER ON DEFENDANT
                                                  MACHIAS SAVINGS BANK'S
MACHIAS SAVINGS BANK,                             MOTION FOR SUMMARY
                                                  JUDGMENT
              Defendant


        Before the court is defendant Machias Savings Bank's motion for summary judgment. For

the following reasons, defendant's motion for summary judgment is granted.

BACKGROUND FACTS

        In August 2008, plaintiffs Beth Hartford and Brent Hartford engaged Northeast Modular

Homes, Inc. (NEMH) to build plaintiffs a manufactured home on their property. (Def.'s S.M.F. ¶

3.) That same month, NEMH executed a promissory note to defendant and plaintiffs secured the

note by executing a mortgage to defendant. (Def.'s S.M.F. ¶¶ 4, 5.) NEMH was required to pay

defendant interest payments under the note on a monthly basis between September 25, 2008 and

February 25, 2009. (Def.'s S.M.F. ¶¶ 8, 9); (Pl.'s Opp. S.M.F. ¶ 8.) NEMH was also required to

make a balloon payment of principal on February 25, 2009, along with any remaining unpaid

interest or other charges due. (Def.'s S.M.F. ¶ 10.) Plaintiffs were not signatories on the

promissory note. (Pls.' A.S.M.F. ¶ 10.)

        In addition to the promissory note and mortgage, plaintiffs and NEMH signed an

Agreement to Reconvey. (Def.'s S.M.F. ¶ 11.) The Agreement to Reconvey states:

1

> [Plaintiffs] agree all fees, costs or interest and principal payments which may be due from the execution [of] said mortgage and note with [defendant] shall be the sole responsibility of [plaintiffs] and [plaintiffs] shall indemnify and hold [NEMH] harmless from the same. Any additional fees, costs, interest or principal payments due to [defendant] after AUGUST 25ᵗʰ, 2008 shall be the sole responsibility of [plaintiffs] and [plaintiffs] shall indemnify and hold [NEMH] harmless from the same, unless such fees, costs, additional interest or principal payments shall be as a result of delays in the completion of the project by [NEMH].

(Def.'s S.M.F. ¶ 14.) Additionally, the Agreement to Reconvey provided that "in the event the [plaintiffs] shall be unable to refinance said debt, [plaintiffs] agree[] to convey the property . . . to [NEMH] in satisfaction of [plaintiffs'] obligations under the terms of the construction contract and under the terms of the loan agreement with [defendant]." (Pls.' A.S.M.F. ¶ 4.)

Plaintiffs were unable to refinance the promissory note executed by NEMH with defendant due to the presence of mold in the manufactured home NEMH acquired for plaintiffs. (Pls.' A.S.M.F. ¶ 7.) NEMH sued plaintiffs in June of 2010 involving disputes over the Agreement to Reconvey and plaintiffs counterclaimed. (Pls.' A.S.M.F. ¶ 7.) The litigation between plaintiffs and NEMH included claims against the company that manufactured plaintiffs' modular home, and the crane company over the presence of mold in plaintiffs' modular home (consumer litigation case). (Pls.' A.S.M.F. ¶ 13); (Def.'s S.M.F. ¶ 34.) Defendant was a party in interest in the consumer litigation case. (Pls.' A.S.M.F. ¶ 14); (Def.'s S.M.F. ¶ 35.)

Defendant and NEMH subsequently modified the promissory note three times. (Def.'s S.M.F. ¶ 15.) The final modification agreement signed on March 31, 2010, extended the date of the balloon payment of the principal, originally scheduled for February 25, 2009, to February 25, 2012. (Def.'s S.M.F. ¶ 18.) The modification agreements made no reference to the interest payments that began on September 25, 2008. (Def.'s S.M.F. ¶ 19); (Pls.' Opp. S.M.F. ¶ 19); (Pls.'

2

A.S.M.F. ¶ 6.) NEMH continued to make interest payments to defendant through July 2010. (Pls.' A.S.M.F. ¶ 8.)

Defendant mailed a notice of default and demand for payment to NEMH and plaintiffs on October 14, 2010, and sent a notification on December 23, 2010 that the full amount under the note and mortgage was due. (Def.'s S.M.F. ¶ 21.) In March 2011, the two principals of NEMH who signed the promissory note with defendant filed for Chapter 7 Bankruptcy and their financial obligations including the promissory note were discharged in July 2011. (Pls.' A.S.M.F. ¶ 9.) Defendant filed its complaint for foreclosure on April 5, 2011. (Def.'s S.M.F. ¶ 22.) The consumer litigation was ongoing at this time. (Pls.' A.S.M.F. ¶ 13.)

In February of 2012, NEMH and plaintiffs settled their dispute in the consumer litigation. (Pls.' A.S.M.F. ¶ 17); (Def.'s Opp. A.S.M.F. ¶ 17.) Defendant did not object to the settlement between plaintiffs and NEMH. (Pls.' A.S.M.F. ¶ 18); (Def.'s Opp. A.S.M.F. ¶ 18.) Pursuant to the settlement, NEMH assigned to plaintiffs all of NEMH's claims against the other parties in the consumer litigation and plaintiffs dismissed their claims against NEMH. (Def.'s S.M.F. ¶¶ 37-39.)

Defendant filed a motion for leave to amend its foreclosure complaint and a motion for attachment and attachment on trustee process on May 18, 2012. (Def.'s S.M.F. ¶¶ 23, 25.) In its motion to amend, defendant sought to assert a claim for contract damages on the grounds that defendant was a third party beneficiary under the Agreement to Reconvey. (Def.'s S.M.F. ¶ 23.) In its motion for attachment, defendant sought an attachment of $168,838.31 and an attachment of plaintiffs' real property, investments, and personal property. (Def.'s S.M.F. ¶ 25.) In July 2012, the court overseeing defendant's foreclosure action set a hearing date of September 27, 2012 on defendant's pending motions. (Def.'s S.M.F. ¶¶ 42-43.)

3

Plaintiffs and the defendants in the consumer litigation settled their case. (Def.'s S.M.F. ¶ 44.)[1] Defendant was not invited to participate in the settlement conference. (Def.'s S.M.F. ¶ 47.) The settlement details were not communicated to defendant. (Def.'s S.M.F. ¶ 48.) Defendant filed an ex parte motion for attachment and attachment on trustee process on September 21, 2012 and sought to attach any of plaintiffs' settlement proceeds. (Def.'s S.M.F. ¶ 51.) The court granted defendant's ex parte motion for attachment on September 21, 2012. (Def.'s S.M.F. ¶ 52.) Plaintiffs moved to dissolve the attachment on September 26, 2012. (Def.'s S.M.F. ¶ 53.) The court indicated that it would issue an order vacating the ex parte attachment at the conclusion of a hearing held on September 27, 2012. (Def.'s S.M.F. ¶¶ 54-56, 58.)

The court assigned to the foreclosure case recommended transfer to the Business and Consumer Docket to avoid the possibility that inconsistent orders would be issued in the foreclosure case and the consumer litigation. (Def.'s S.M.F. ¶¶ 65-67.) Defendant's foreclosure action was briefly transferred to the Business and Consumer Docket before being sent back to the Machias District Court. (Def.'s S.M.F. ¶¶ 68, 72.) Defendant's attachment proceeding terminated when an accounting revealed that from plaintiffs' $15,000.00 consumer litigation settlement proceeds, only $2.00 would go to plaintiffs because the remainder belonged to plaintiffs' attorneys. (Def.'s S.M.F. ¶ 70.) Defendant determined not to pursue its motion to amend its complaint to

[1] Plaintiffs object to defendant's S.M.F. ¶ 44 and argue that defendant's S.M.F. ¶ 44 is "not an admissible statement of fact, but is an inadmissible opinion and argument of counsel representing Defendant and is inadmissible hearsay and is not an admissible fact of the quality that could be admissible at trial. Defendant's Exhibit P is a transcript of the hearing in which counsel is making an argument to the court. The affidavit of Mr. Zimistowski (sic) contains various statements of his opinions, impressions and hearsay all of which are inadmissible evidence in this case. Paragraphs 6, 7, and 11 of the Affidavit are inadmissible hearsay." (Pls.' Opp. S.M.F. ¶ 44.) Defendant's S.M.F. ¶ 44 is supported by two exhibits, only one of which is objected to by plaintiffs. The fact that there was a settlement is supported by defendant's exhibit K, to which plaintiffs do not object. The fact that the case was settled is also supported by Attorney Zmistowski's affidavit paragraphs 9-10, to which plaintiff do not object. Plaintiffs did not qualify or deny defendant's S.M.F. ¶ 44, this statement is deemed admitted for the limited purpose of establishing that there was a settlement between plaintiffs and the defendants who were parties to the consumer litigation case. See M.R. Civ. P. 56(h).

4

assert a claim for contract damages on the grounds that it was a third party beneficiary under the Agreement to Reconvey. (Def.'s S.M.F. ¶ 71.)

A bench trial was held on defendant's foreclosure claim on January 30, 2014. (Def.'s S.M.F. ¶ 73.) The court issued its judgment on defendant's foreclosure claim on March 18, 2014. (Def.'s S.M.F. ¶ 74.) The court decided that no payments were due to defendant at the time defendant sent its notice of default to NEMH and plaintiffs and that defendant was not entitled to foreclosure. (Def.'s S.M.F. ¶¶ 76-77.) Additionally, the court found that defendant's notice of foreclosure did not comply with 14 M.R.S. § 6111. (Def.'s S.M.F. ¶¶ 78-80.)

Following the judgment, plaintiffs asked for attorney's fees pursuant to 14 M.R.S. § 1601. (Def.'s S.M.F. ¶ 81.) Plaintiffs' request for attorney's fees was denied. (Def.'s S.M.F. ¶ 82.)

PROCEDURAL BACKGROUND

Plaintiffs filed a complaint against defendant on August 25, 2015 and alleged four counts: count I, wrongful use of civil process, count II, intentional infliction of emotional distress, count III, abuse of process, and count IV, punitive damages. Defendant filed a motion to dismiss on October 13, 2015. Plaintiffs opposed defendant's motion to dismiss on November 3, 2015. Defendant replied on November 12, 2015. The court denied defendant's motion on November 29, 2015. Defendant answered plaintiffs' complaint on December 21, 2015. On April 13, 2017, plaintiffs sent a letter to the court indicating that they were withdrawing their claim for intentional infliction of emotional distress and claim for attorney's fees.

The court granted parties' joint motion to stay the case on October 3, 2017. The court granted defendant's consented to motion to continue matter on January 29, 2019.

Defendant filed a motion for summary judgment on March 4, 2019. Plaintiffs opposed defendant's motion for summary judgment on April 8, 2019. Defendant replied to plaintiffs'

5

opposition to its motion for summary judgment on May 22, 2019. Plaintiffs filed a response to defendant's reply statement of material facts on May, 22, 2019, a filing not permitted by Rule 56. M.R. Civ. P. 56(h).

DISCUSSION

A. Standard of Review

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." Lougee Conservancy v. CityMortgage, Inc., 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for each element of the plaintiff's cause of action. See Savell v. Duddy, 2016 ME 139, ¶ 18, 147 A.3d 1179.

On summary judgment, the court considers reasonable inferences that may be drawn from the facts. Curtis v. Porter, 2001 ME 158, ¶ 9, 784 A.2d 18. Additionally, the nonmoving party benefits from all "favorable inferences that may be drawn from the facts presented." Id. (quotation marks omitted). "When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." Id.

B. Wrongful Use of Civil Process

Defendant argues that: (1) as a matter of law it had probable cause to bring the foreclosure action against plaintiffs and NEMH; (2) there is no genuine issue of material fact that it did not initiate the foreclosure for an improper purpose; and (3) it is immaterial that its notice of foreclosure did not comply with 14 M.R.S. 6111. (Def.'s Mot. Summ. J. 10-13.) Plaintiffs argue

6

that there are genuine issues of material fact about whether defendant initiated its foreclosure for an improper purpose and as a matter of law defendant did not have probable cause to bring the foreclosure action. (Pls.' Opp'n to Def.'s Mot. Summ. J. 8-13.)

A claim for wrongful use of civil proceedings exists when "(1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought." Pepperell Tr. Co. v. Mountain Heir Fin. Corp., 1998 ME 46, ¶ 17, 708 A.2d 651. The parties do not dispute that the previous proceedings terminated in plaintiffs' favor.

"To establish the absence of probable cause, the plaintiff must show that the defendant initiated the prosecution without reasonable grounds for believing that the party against whom the prosecution is initiated was guilty of the charged offense." Price v. Patterson, 606 A.2d 783, 785 (Me. 1992). Reasonable grounds exist if a person who is calm and not governed by passion, prejudice or want of ordinary caution and care views the information as sufficient to believe there is a factual and legal basis for the action. Id. The question of probable cause is a mixed question of fact and law. Id. "Whether the circumstances alleged to show it probable are true and existed, is a matter of fact . . . but whether, supposing them true, they amount to probable cause, is a question of law for the Court." Id. at 785-86 (quotation marks omitted).

Under the note, NEMH was required to pay defendant monthly interest payments from September 25, 2008 to February 25, 2009.[1] (Def.'s S.M.F. ¶¶ 8, 9.) February 25, 2009 was the original due date of the required balloon payment of the principal and all unpaid interest under the note. (Def.'s S.M.F. ¶ 10.) Defendant and NEMH modified the date on which the principal

---

[1] In the foreclosure action, the District Court determined that the date in the construction loan note, February 25, 2008 was incorrect and should be February 25, 2009. (Pls.' Opp. S.M.F. ¶ 8); (Def. Ex. A, p. 8.)

7

balloon payment was due under the note on three occasions. (Def.'s S.M.F. ¶ 15.) The last of these modifications extended the balloon payment date to February 25, 2012. (Def.'s S.M.F. ¶ 18.) These modification agreements were silent as to whether they extended the requirement for interest payments. (Def.'s S.M.F. ¶ 19.) Defendant claims that it believed that the modifications implicitly extended the end date of the interest payments to February 25, 2012 as well. (Def.'s S.M.F. ¶ 21.) NEMH continued to make interest payments to defendant through July 2010, past the original February 25, 2009 deadline. (Pls.' A.S.M.F. ¶ 8.)

Plaintiffs argue that as a matter of law there was no probable cause because the trial court ultimately ruled that the loan modification agreements to extend the time for the balloon payment did not alter the original cutoff for the interest payments, which ended on February 25, 2009. (Pls.' Opp'n to Def.'s Mot. Summ. J. 11); (Def.'s S.M.F. ¶ 76.) The standard for probable cause differs from the third element, favorable termination. As a matter of law, defendant had probable cause to believe that a default had occurred. The modification agreements extended the balloon payment date and a person who is calm and not governed by passion, prejudice or want of ordinary caution and care could factually and legally believe that this modification also extended the requirement for the interest payments, even though those payments were not referenced in the modifications or extended in fact. See Price, 606 A.2d at 785.

Defendant's failure to comply with 14 M.R.S. § 6111 in its notice of right to cure does not amount to a lack of probable cause. In Bordetsky v. JAK Realty Trust, the Law Court held that if a note unambiguously states that a loan in not for personal, household, or family purposes, no extrinsic evidence may be considered and section 6111 does not apply. 2017 ME 42, ¶ 13, 157 A.3d 233. In this case, plaintiffs' mortgage deed given to defendant provided that the mortgage

was "given primarily for a business, commercial, or agricultural purpose." (Def.'s S.M.F. ¶ 6.) Compliance with section 6111 by defendant was not necessary pursuant to Bordetsky.

The issue of whether defendant had an improper purpose need not be addressed. Plaintiffs must "adduce prima facie evidence as to each element of the claim . . . that the party asserts" in order to survive defendant's motion for summary judgment. See Savell, 2016 ME 139, ¶ 18, 147 A.3d 1179. Summary judgment is entered in favor of defendant on plaintiffs' wrongful use of civil process claim.

C. Intentional Infliction of Emotional Distress

Defendant argues that plaintiffs have not established prima facie evidence for every element of an intentional infliction of emotional distress claim. (Def.'s Mot. Summ. J. 13-15.) Plaintiffs state that they withdrew their intentional infliction of emotional distress claims in April 2017. (Pls.' Opp'n to Def.'s Mot. Summ. J. 19.) Plaintiffs may not unilaterally withdraw a claim after defendant has filed an answer. See M.R. Civ. P. 41(a)(1). Summary judgment is entered for defendant on the intentional infliction of emotional distress claim.

D. Abuse of Process

Defendant argues that plaintiffs cannot demonstrate a claim for abuse of process because no facts exist that defendant moved for attachment with an ulterior motive or improper purpose. (Def.'s Mot. Summ. J. 15-17.) Plaintiffs argue that because defendant never had a legal right to recover money from plaintiffs, defendant's purpose was improper in pursuing its motion for attachment. (Pls.' Opp'n to Def.'s Mot. Summ. J. 13-16.)

To prevail on an abuse of process claim, plaintiffs must show that: (1) the defendant's use of process was in a manner improper in the regular conduct of the proceeding; and (2) the existence of an ulterior motive. Advanced Constr. Corp. v. Pilecki, 2006 ME 84, ¶ 23, 901 A.2d 189. "In

9

contrast to a claim of wrongful use of civil proceedings which lies where there is no basis for an entire claim, abuse of process covers the allegedly improper use of individual legal procedures after a suit has been filed properly." Pepperell, 1998 ME 46, ¶ 16 n.8, 708 A.2d 651 (quotation marks omitted). "Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." Id. (quotation marks omitted). "Regular use of process, such as filing a law suit, cannot constitute abuse, even if a decision to act or a decision not to act, was influenced by a wrongful motive." Tanguay v. Asen, 1998 ME 277, ¶ 5, 722 A.2d 49.

A wrongful motive "may be inferred from an improper act," but "the reverse is not true." Simon v. Navon, 71 F.3d 9, 16 (1st Cir. 1995). To survive summary judgment, plaintiffs must establish evidence other than motive to show that defendant's motion for attachment was done for an improper purpose. Id. ("[A] showing of bad motive in connection with 'regular' process is not enough."). To satisfy this burden, for example, plaintiffs could show "evidence of a threat" to plaintiffs or "a disclosure confided to a third party" that defendant planned to file the motion for attachment solely for an improper purpose. Id.

Plaintiffs' argue that although defendant knew or should have known that it could not recover funds from plaintiffs on either its contract claim or its foreclosure claim, defendant brought the motion for attachment to collect the funds anyway. (Pls.' Opp'n to Def.'s Mot. Summ. J. 13-16.) Plaintiffs have not raised a genuine issue of material fact that defendant filed its motions for attachment for a purpose other than that for which what a motion for attachment is intended. Summary judgment is entered for defendant on the abuse of process claim.

E. Punitive Damages

Defendant argues that punitive damages are not a separate cause of action but are rather an element of damages and summary judgment should be entered for defendant on this claim. (Def.'s

10

Mot. Summ. J. 17-18.) Plaintiffs argue that a genuine issue of material fact exists as to whether plaintiffs should be awarded punitive damages. (Pls.' Opp'n to Def.'s Mot. Summ. J. 16-19.)

"Punitive damages are available based upon tortious conduct only if the defendant acted with malice." Bratton v. McDonough, 2014 ME 64, ¶ 25, 91 A.3d 1050 (quotation marks omitted). "Malice can be express or it can be demonstrated by conduct that is so outrageous that malice toward a person injured as a result of that conduct can be implied." Id. (quotation marks omitted).

Plaintiffs have no tort claims remaining on which to base their punitive damage claim. Summary judgment is entered on the punitive damages claim.

The entry is

> Defendant Machias Savings Bank's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant Machias Savings Bank and against Plaintiffs Beth C. Hartford and Brent Hartford on Plaintiffs' Complaint.

Date: December 13, 2019

Nancy Mills
Justice, Superior Court

Entered on the Docket: 12-17-19

11